The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Cambridge Integrated Services was the carrier on the risk at the time in question.
3. The plaintiff's average weekly wage at the time, including overtime and all allowances was $606.00.
4. Defendant denied compensation to Plaintiff for weekly benefits and medical payments, pursuant to Industrial Commission Form 61.
5. The parties stipulated that the following documents are authentic and genuine and are hereby stipulated into the hearing record marked as Joint Exhibits A through H as follows:
a. Industrial Commission Form 33
b. Industrial Commission Form 33R
c. Industrial Commission Form 61
d. Records from Celeste Goode, M.D.
e. Records from Arvo Kanna, M.D.
f. Records from Dr. Pratt
g. Plaintiff's discovery responses
h. Defendant's discovery responses
6. The Pre-Trial Agreement dated December 1, 2000 was submitted by the parties and is incorporated herein by reference.
7. The depositions of Celeste M. Good, M.D. and Arvo Kanna, M.D. are a part of the evidentiary record in this case.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff has been employed by defendant Kmart since 1981 in various positions and stores in North Carolina. Plaintiff began working at a Kmart in Raleigh, but soon transferred to Kmart in Williamston, North Carolina and worked there for approximately five years. She then began working at the Kmart in Washington, North Carolina, where she was the Sporting Goods Manager and worked there until approximately February 1996. Plaintiff was then transferred to the Wilson, North Carolina store in February 1996 and was promoted to Assistant Store Manager in charge of hardlines (Hardlines Manager).
2. Plaintiff's duties as the Hardlines Manager included ensuring that layouts were complete, ordering merchandise, ensuring price changes were made, placing stock on the shelves, customer service and managing employees in her department. As part of her duties, Plaintiff, and the other Assistant Managers, would actually have to place stock on the shelves, unload freight, and perform other manual labor, if there were no other employees in her department available to perform those duties. Plaintiff's job was to make sure her side of the store was running properly and to "get the job done".
3. Plaintiff was a salaried employee and did not have any set hours. However, Assistant Managers at Kmart work very long hours on a regular basis and it was not unusual for Assistant Managers to work 60-70 hours per week. Plaintiff was essentially required to perform the duties as were required of all Assistant Managers for Kmart. This included rotating with other Assistant Managers to be the Manager in charge of the store during certain periods of time including opening and closing the store, and on weekends. Plaintiff's duties included insuring that the smaller department heads under her were performing their duties and making sure that the hard lines section of Kmart was running efficiently. When she was the Manager in charge, she was also responsible for the entire store. Again, this was part of the duties of all Assistant Managers.
4. Plaintiff testified that when she began working at the Wilson store, she was required to do jobs that were not within her job requirement as the Hardlines Manager. She testified that she was required to perform other manager's jobs and those of other department head jobs, including manual labor such as replenishing stock on the shelves and putting stock out on the floor. However, Plaintiff's testimony that these activities were not within her job description is not considered credible.
5. Gloria Pittman, the Softlines Manager at the Wilson Kmart during the time that Plaintiff was employed as the Hardlines Manager, testified that she had essentially the same job duties as Plaintiff, except that her duties encompassed the soft lines or clothing area of the Kmart store, rather than the hard lines or non-clothing areas of the store. Ms. Pittman testified that her hours of duty varied depending on the ability to perform the job, the availability of associates, etc. Ms. Pittman testified that as an assistant manager, she was required to unload freight, stock shelves, and perform duties that might normally be performed by other associates, if the job necessitated the performance of these duties. Ms. Pittman testified that she was aware of the duties performed by Plaintiff and that these were normal and ordinary duties performed by assistant managers at Kmart.
6. Plaintiff further testified that during her work at Kmart, she felt like she was being harassed by her manager as well as co-employees and customers at Kmart. Plaintiff testified that during this time period, the manager and co-workers at Kmart were "bugging" her home and listening to her conversations at home. She knew this because they would repeat things to her at work that she had said or had happened at her home. She felt that Kmart co-workers and customers were listening in on her conversations and performing surveillance activities at her home. They would also call her names and drive by her home and shoot at her windows. Plaintiff further testified that her neighbors were co-conspirators in this activity.
7. Plaintiff also testified that this activity had gone on to some degree at the Kmart store in Washington when she had been employed there in the early 90's. Plaintiff testified that, she believed that she and her daughter had been drugged and raped on at least two occasions in her home and that her manager at Kmart had been involved somehow in facilitating this activity.
8. On March 6, 1998, Plaintiff was evaluated by Dr. Arvo Kanna with East Carolina Neurology on a referral from Plaintiff's family doctor. At that time, Plaintiff was complaining that she had a sense of numbness and weakness and shooting pains in her upper and lower extremities. Dr. Kanna noted a long history of paranoid thoughts and believed that the Plaintiff exhibited paranoid delusions; he performed a number of diagnostic tests. However, Dr. Kanna was never able to find any objective physical problems to explain Plaintiff's symptoms. Dr. Kanna referred Plaintiff to Dr. Celeste Good, a local psychiatrist.
9. Dr. Good began treating Plaintiff in March 1998 and continues to treat the Plaintiff. Dr. Good testified that Plaintiff was suffering from paranoid delusional disorder which pre-existed her employment at the Wilson Kmart. Dr. Good also testified that the Plaintiff was suffering from stress at work and things that she perceived were happening to her on the job. Dr. Good testified that she did not believe that Plaintiff's condition arose from her work but that the stressful environment, specifically Plaintiff's long work hours, could have exacerbated Plaintiff's condition. Dr. Good did not indicate that there were any unusual activities at work that caused or aggravated her condition but that it was simply the stress related to the long hours and the conditions that she perceived were occurring.
10. Dr. Kanna indicated that he would defer to Dr. Good regarding Plaintiff's psychiatric condition and its causes but indicated that he believed that she was overworking and did not get enough sleep. Dr. Kanna indicated that he felt that physically Plaintiff was able to work but psychologically she was not handling it well and needed to stay out of work. He believed this was so because Plaintiff was expressing delusions and paranoid thoughts. In addition, Plaintiff could not interact with people appropriately in that condition. Dr. Kanna believed that it was possible that with sleep loss and fatigue Plaintiff had secondary psychological symptoms that may be the sole explanation for those symptoms. He also felt that because Plaintiff had the feeling that something awful was going to happen to her because of the paranoid delusions, she believed that there was something wrong with her body. However, Dr. Kanna could not find anything objectively wrong with the Plaintiff physically.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Due to insufficient medical evidence, Plaintiff has not proven that she sustained an injury by accident arising out of and in the course of her employment with Defendant Kmart. N.C.G.S. § 97-2(6).
2. Due to insufficient medical evidence, Plaintiff has not proven that she sustained an occupational injury arising out of and in the course of her employment with Defendant Kmart. N.C.G.S. § 97-53.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim for workers' compensation benefits is DENIED.
2. Each side shall bear its own costs, except Defendants shall pay an expert witness fee of $200.00 to Dr. Celeste M. Good.
This the ___ day of November 2001.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER